ELIZABETH BRANDSTEIN AND HARRY BRANDSTEIN, PLAINTIFFS-RESPONDENTS, v. THE IRONBOUND TRANSPORTATION COMPANY, DEFENDANT-APPELLANT.

Argued February 7, 1934—Decided May 4, 1934.

For the appellant, *Maurice J. McKeown* and *William H. Speer.*

For the respondents, *Elias G. Willman.*

The opinion of the court was delivered by

DONGES, J. This appeal brings up a judgment of the Supreme Court affirming a judgment of the First District Court of the city of Newark. Plaintiff Elizabeth Brandstein was a passenger in a bus of Public Service Co-ordinated Transport when that bus and a bus of appellant, Ironbound Transportation Company, collided. Suit was brought against the Ironbound Transportation Company, and upon the trial the following question was propounded to Mrs. Brandstein: "And did you receive compensation from the Public Service as the result of the accident?" An objection was interposed by counsel for the plaintiffs and the trial court sustained the objection. Counsel for the appellant excepted to this ruling in the following language: "I take exception, on the ground that the plaintiff has received a substantial sum of money from the Public Service in consideration for signing a covenant not to sue, and I wish to introduce the amount of the

consideration into evidence for the purpose of mitigating the damages as against the defendant herein, on the theory that the plaintiff is not entitled to be doubly compensated for one injury."

The Supreme Court affirmed on the authority of *Fast* v. *Pecan,* 11 *N. J. Mis. R.* 253; 165 *Atl. Rep.* 281, a Supreme Court decision, which seems to be the only case in point in this state, this court apparently never having passed on the question.

In Fast *v.* Pecan, the case was decided upon another ground. The Supreme Court, in sustaining the refusal of the trial court to permit testimony of the receipt of money in consideration of the execution by the plaintiff of a covenant not to sue, said:

"The appellant's first point is that the defendant-appellant should have been permitted to introduce testimony that the plaintiff had, for a consideration, executed a covenant not to sue the co-defendant, Edward Melbourne, and testimony as to the amount of such consideration, 'for the purpose of mitigating damages as to the defendant, Max Pecan, in the event that the jury decided that the damages sustained by the plaintiff were the *proximate result* of the negligence of the defendant, Max Pecan, in the control and operation of his automobile.'

"We find no fault with the ruling. Certainly if the jury found the damages sustained were the *proximate result* of the negligence of Pecan, he was not entitled to contribution from another. It may be of interest to note that in *Public Service* v. *Matteucci,* 105 *N. J. L.* 114; 143 *Atl. Rep.* 221, it was held that whenever the damages are the produce of the contributory misfeasance of more than one person, while an action will lie against each of the wrongdoers or against both, neither one can claim contribution from the other so as to distribute the loss equally among themselves, the reason being that the law will not undertake to adjust the burdens of misconduct."

It is settled that, while a person injured may sue one or some or all of the persons liable for the trespass, he can have

but one satisfaction for the injury. We are not dealing with the questions of satisfaction of plaintiffs' claims by a tort-feasor, or of release of one tort-feasor. It is settled in this state that a covenant not to sue one person does not release others liable to the injured party. *Bowne* v. *Mt. Holly National Bank,* 45 *N. J. L.* 360. The question presented here is as to the right of a joint tort-feasor to have a payment in consideration of the execution of a covenant not to sue another joint tort-feasor applied to reduce *pro tanto* the recovery against the tort-feasor sued.

It must be conceded that the authorities upon this subject are not harmonious. The weight of authority, and the authorities which we regard as declaring the sound rule, hold that when suit is brought against one joint wrongdoer, the amount received for the execution of a covenant not to sue another joint wrongdoer is to be credited on any liability which may be found to exist against the one sued.

Such is the holding in *Sloan* v. *Herrick* (1877), 49 *Vt.* 327; *Knapp* v. *Roche* (1884), 94 *N. Y.* 329; *Finlay* v. *Planter et al.* (*Sup. Ct., R. I.,* 1932), 160 *Atl. Rep.* 865; *Balick* v. *Philadelphia Dairy Products Co., Inc.* (*Superior Court of Delaware,* 1932), 162 *Atl. Rep.* 776, and many other cases.

In *O'Neill* v. *National Oil Co.,* 231 *Mass.* 20; 120 *N. E. Rep.* 107, it was said:

"The defendant asked the court to instruct the jury, 'if the jury find there is any liability on the part of the defendant, they must consider the payment of $1,500 by Converse in mitigation of damages.' The request was refused. While the jury must have found that this money was not received from Converse to release or discharge him from liability, and it was received from him in consideration of the plaintiff's covenant not to sue him for personal injury she had received, the $1,500 should be applied in reduction of damages. She was entitled to maintain an action against each or all who contributed to her injury, although she was entitled to but one satisfaction. Her cause of action was not extinguished by the receipt of money. It was, however, a partial satisfac-

tion of her claim, and she cannot receive for the same wrong, remuneration in excess of her actual damage. It would be unjust for the plaintiff to retain money received from one of several tort-feasors under a covenant not to sue him for the injury, and to recover from the other tort-feasor full satisfaction for the same injury. In a joint contract obligation where money is received from one debtor under a contract never to sue him, the payment in consideration of the agreement is a payment on account of the debt, and to that extent is a discharge of the debt as to all debtors. See 25 *H. L. R.* 203, 218. The same principle applies to an action sounding in tort. In *Dwy* v. *Connecticut Co.,* 89 *Conn.* 74, 79; 92 *Atl. Rep.* 883; *L. R. A.* 1915 E 800, the agreement of the plaintiff with one tort-feasor was construed as a covenant not to sue him, but evidence was admitted of the amount paid by him in mitigation of damages in the action against the other tort-feasor. This rule was followed in *Bloss* v. *Plymale,* 3 *W. Va.* 393, 409; *Snow* v. *Chandler,* 10 *N. H.* 92, 95; 34 *Am. Dec.* 140; *Chamberlain* v. *Murphy,* 41 *Vt.* 110, 118. The same ruling was made in the trial court in *Rice* v. *Reed* (1900), 1 *Q. B.* 54, 58. It was assumed in the Court of Appeals that this ruling was correct and apparently this course was followed in *Duck* v. *Mayen,* 2 *Id.* 511. See, also, *Heyer* v. *Carr,* 6 *R. I.* 45; *Chicago* v. *Babcock,* 143 *Ill.* 358; 32 *N. E. Rep.* 271; *Miller* v. *Beck & Co.,* 108 *Iowa* 575; 79 *N. W. Rep.* 344; *Ellis* v. *Esson,* 50 *Wis.* 138, 154; 6 *N. W. Rep.* 518; 36 *Am. Rep.* 830; *Pogel* v. *Meilke,* 60 *Wis.* 248; 18 *N. W. Rep.* 927; *Miller* v. *Fenton,* 11 *Paige* (*N. Y.*) 18."

To the same effect is *Bogdahn* v. *Pascagoula Street Railway and Power Co.,* 118 *Miss.* 668; 79 *So. Rep.* 844. This was an action by the representatives of an employe of a telephone company against the defendant power company for negligence in maintaining a high tension wire near a telephone pole resulting in the death of the workman while working on the pole. Evidence was admitted that the telephone company had paid $7,500 for a covenant not to sue it, and the jury was instructed that they should allow a credit in this suit against the damages found to be due the plaintiffs.

The jury found a verdict of no cause of action, and plaintiffs appealed. The court said:

"In other words, if the jury believed that the $7,500 paid to appellants by the telephone company was sufficient to compensate appellants in full for all damages for the death of the deceased, then the verdict of the jury should have been for the defendant, even though they believed that the appellee was liable as a joint tort-feasor; thereby finding that the amount due appellants as damages for the death was no more than $7,500, the amount already paid appellants by the joint tort-feasor, Cumberland Telephone and Telegraph Company. * * *

"The payment of $7,500 and covenant not to sue entered into by the appellants and the joint tort-feasor Cumberland Telephone and Telegraph Company, amounted to a surrender of appellants' right of action against the telephone company for damages; however, this was only a release from suit of the telephone company, but it was not a release of the other tort-feasor, appellee, except *pro tanto*.

"This court has held that there is no release of joint tort-feasors unless there be a settlement by full compensation for the injury inflicted. Any amount paid by a joint tort-feasor which is not paid and received as a full settlement of the claim, is to go only as a payment on the claim for damages, and is not a bar to suit against any other joint tort-feasor."

In *McDonald* v. *Goddard Grocery Co.*, 184 *Mo. App.* 432; 171 *S. W. Rep.* 650, the court said:

"This rule [that a covenant not to sue is not a general release], coming to us from the earliest times, is recognized with practical unanimity to-day. Why should an injured person not be allowed to receive a portion of his compensation for an injury from some of the wrongdoers, without discharging the others? There is no more hindrance to freedom of contract in this than in any other instance. The parties to such a contract knew that, if the covenant not to sue was violated, the covenantees could have their action for the breach, in which they would recover the damages flowing from such breach. The other wrongdoers have no cause to com-

plain, for in fact it was a relief to them, since, as there can be but one satisfaction, whatever was paid by the covenantees lessens their liability that much."

Likewise, in *Knapp* v. *Roche,* 94 *N. Y.* 329:

"Yet satisfaction by one joint tort-feasor has always been held to be available as a bar to an action against another. * * * this rule applies with equal reason to a partial satisfaction by one of the wrongdoers for the damages occasioned by the joint wrongful act of both. Such evidence is proper in mitigation of damages, and in the former practice was admissible under the general issue."

And in *Slade* v. *Sherrod,* 175 *N. C.* 346; 95 *S. E. Rep.* 557:

"It is true that, where there are joint tort-feasors, there can be but one recovery, and a settlement with one is a release of the other. * * * There is an exception when there is not a release, but merely a 'covenant not to sue,' given to one tort-feasor, in which latter case the amount paid is simply a credit to be entered on the total recovery. *Mason* v. *Stephens,* 168 *N. C.* 370; 84 *S. E. Rep.* 527."

*Adams Express Co.* v. *Beckwith,* 100 *Ohio St.* 348; 167 *N. E.* 300, deals with this subject, and there it was held:

"If it turns out that there is any such agreement as in the case at bar (there were in this case covenants not to sue two of the three joint tort-feasors), by which partial satisfaction may have been made by other persons charged with the commission of the wrong or injury, then such partial satisfaction will inure to the benefit of all parties responsible in law for the commission of the wrong. * * *

"But again, how can a party injured (*sic*) complain that someone else has paid part of the damages? He is not prejudiced thereby, but, on the contrary, the amount of the judgment against him is subject to be reduced by the exact amount paid by the co-tort-feasor, whether a party to the record or not."

Another case to the same effect is *Ellis* v. *Esson, supra:*

"The plaintiff's agreement not to sue Comstock for the trespass, under the circumstances disclosed by the evidence

in this case, does not, therefore, discharge the other joint trespasser except *pro tanto*. The court below properly rendered judgment in favor of the plaintiff for the damages he had sustained by reason of the trespass, less the sum of $200 received of Comstock. This rule is, we think, supported by the great weight of authority, as will be seen by an examination of the large number of authorities cited by the learned counsel for the respondents."

A leading case on the subject, and one frequently cited in various jurisdictions, is that of *Bloss* v. *Plymale, 3 W. Va.* 393; 100 *Am. Dec.* 750, where it was said:

"As the cause of action is against all the joint trespassers, the plaintiff may sue all or either of them at his election; and he is entitled to full satisfaction, but he is entitled to sue one satisfaction. * * *.

"It follows, then, if the damages are satisfied in part by payment or compromise with some of the defendants, the plaintiff may still proceed against those who remain in the record. And in such case it was but right and proper that the jury should deduct in their finding whatever sum the plaintiff had already received on account of the alleged trespasses from any of the joint parties who were afterwards dismissed. This would be the just application of the rule that there cannot be a double remuneration for the same wrong."

Further support for this view is found in *Berry* v. *Pullman Co., 249 Fed. Rep.* 816 (United States Circuit Court of Appeals, Fifth District), where the court held as follows:

"While we concede that the authorities on this subject are not harmonious, yet we think the weight of authority, at all events the authorities which we are disposed to recognize as sound, treat a covenant not to sue, such as that given in this case, as a mere agreement to release the one joint tort-feasor by whom the settlement is made, and not as a release of the cause of action, leaving the other joint tort-feasors liable to the person injured. It is always understood, and in all these cases it is held, that the joint wrongdoer against whom the suit is brought, when such a settlement with another wrong-

doer has been made as pleaded, is entitled, *pro tanto,* to the amount received in settlement by the plaintiff injured as a credit on any liability which may be found to exist against the one sued."

The same rule has been adopted in the State of Illinois in the case of *City of Chicago* v. *Babcock,* 143 *Ill.* 358; 32 *N. E. Rep.* 271:

"If, as claimed by appellee, the $150 was paid and received simply in consideration of the agreement not to sue Le Cardi, and not in satisfaction of the damages, but only in part payment of the same, then the transaction between appellee and Le Cardi did not amount to an accord and satisfaction, and was no bar to the suit against appellant. In fact it was for the interest of the latter that appellee should receive part payment of her claim from Le Cardi, and thereby reduce the amount of damages recoverable from it." Citing authorities.

In *Dwy* vs. *Connecticut Co.* (*Supreme Court of Errors of Connecticut*), 92 *Atl. Rep.* 883, Chief Justice Prentice said, in holding that the receipt of a sum of money for a covenant not to sue one of two wrongdoers did not release the other wrongdoer:

"It has been suggested as an objection to the conclusion we have reached that the result of it is to permit the injured party to obtain more than full satisfaction. *McBride* v. *Scott,* 132 *Mich.* 176, 182; 93 *N. W. Rep.* 243; 61 *L. R. A.* 445; 102 *Am. St. Rep.* 416; 1 *Ann. Cas.* 61; *Chapin* v. *Railroad Co.,* 18 *Ill. App.* 47, 50. Under our theory of the law and the rule, as we interpret it, this result is impossible of attainment. Full satisfaction is in itself a bar to further recovery. *Ayer* v. *Ashmead,* 31 *Conn.* 447, 452; 83 *Am. Dec.* 154. When the right of action is once satisfied it ceases to exist. If part satisfaction has already been obtained, further recovery can only be had of a sufficient sum to accomplish satisfaction. Anything received on account of the injury inures to the benefit of all, and operates as payment *pro tanto.* This is the familiar rule where consideration has been received in return for covenants not to sue or in part payment, and it is the logical and reasonable one." Citing cases.

It is urged that, inasmuch as there can be no division of responsibility and no enforced contribution as between joint tort-feasors, there can be no application of payments by one or more tort-feasors in diminution of the amount recoverable by suit from another joint tort-feasor. Such argument overlooks entirely the fundamental rule that a person damaged can receive but one satisfaction for his injury. If he has received from one joint wrongdoer satisfaction and executed a release, it is taken to be full satisfaction and releases all jointly liable for the injury. A covenant not to sue one joint tort-feasor does not release other joint tort-feasors. If less than full satisfaction has been received for a covenant not to sue, reason, as well as authority, require that an injured person recover from other joint tort-feasors who are liable for his damage, but that his recovery from all the persons charged with responsibility for his injury be limited to the amount of his damage. Justice and fair dealing commend such rule.

That payments by persons not interested in the cause of action, as wrongdoers, are not to be applied in diminution of damages does not lessen the force of the rule here applied. Such payments are not made by reason of any liability to answer for the wrongful act, but grow out of a relationship not connected with the wrongful act complained of. Such payments are by reason of gratuity or contract.

We conclude that the trial judge erred in overruling the appellant's offer to show that partial, if not full satisfaction was received from a joint tort-feasor.

The judgment under review is reversed, and a *venire de novo* ordered; costs to abide the event.

*For affirmance*—THE CHIEF JUSTICE, 1.

*For reversal*—TRENCHARD, CASE, BODINE, DONGES, HEHER, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 11.