PASSAIC-BERGEN LUMBER COMPANY, PLAINTIFF-RE-SPONDENT, v. UNITED STATES TRUST COMPANY, DEFENDANT-APPELLANT.

Submitted October 28, 1932—Decided January 31, 1933.

For the plaintiff-respondent, *Harry Loeb*.

For the defendant-appellant, *Saul & Joseph E. Cohn*.

The opinion of the court was delivered by

WELLS, J. This is an appeal by the defendant from a judgment entered in the Supreme Court on a verdict directed by the trial judge, at the Passaic Circuit, in favor of the plaintiff, against the defendant.

The grounds of appeal are that the court erred:

1. In refusing to grant defendant's motion of nonsuit.

2. In directing a vedict against the defendant and in favor of the plaintiff.

The suit was brought by the Passaic-Bergen Lumber Company, plaintiff, against the United States Trust Company, defendant, to recover the proceeds of two checks with interest thereon, one of which was for $5,700 and the other for $4,000, signed by two debtors of the plaintiff and made payable to the plaintiff's order, and delivered to one Schick, who was manager of the East Orange branch of the plaintiff's business.

Schick had permitted the Sheridan Construction Company to buy on credit, building materials from defendant's East Orange yard, to the extent of about $35,000, and when he learned that the Sheridan Construction Company was in financial difficulties and unable to finish the houses, into which the plaintiff's building materials had gone, Schick conceived the idea of incorporating a new company, known as the Fidelity Home Builders, Incorporated, to take over and complete these houses, and rent or sell them, and thereby salvage as much as possible from the failure of the Sheridan Construction Company.

Accordingly, without notice to the plaintiff and without its knowledge or authorization, the Fidelity Home Builders, Incorporated, was incorporated and took over the houses and proceeded to complete them, Schick took the two checks in question and endorsed with a rubber stamp the name "Passaic-Bergen Lumber Company" thereon and underneath also endorsed with a rubber stamp the name "Fidelity Home

Builders, Incorporated," and deposited the two checks, aggregating $9,700, in defendant's bank to the account of Fidelity Home Builders, Incorporated.

The defendant collected from the banks on which these checks were drawn the amounts thereof and permitted the disbursements thereof by the Fidelity Home Builders, Incorporated.

Schick says the proceeds of these checks were used to complete the houses. The evidence does not disclose whether the houses were ultimately conveyed to the plaintiff. It does show that prior to the conveyance by the Sheridan Construction Company to Fidelity Home Builders, Incorporated, plaintiff advanced approximately $10,000 cash, which was used in the construction of the buildings.

The plaintiff brings this action on the theory of money had and received by the defendant for the use of the plaintiff, that is to say, that the checks collected by the defendant belonged to the plaintiff and that the defendant is under an implied contract to pay them to the plaintiff and breached that contract when it improperly paid them to another.

The first question is whether Schick had authority to endorse the checks in the name of the plaintiff and pass them on to the Fidelity Home Builders, Incorporated.

A careful examination of the evidence clearly shows that he had no such power either express or implied.

The plaintiff proved by its by-laws, minutes, and resolutions filed with its banking depositories that all checks must be signed by its treasurer and one of its vice-presidents.

"Where the facts are clear and undisputed, and conclusively show lack of authority in an agent, question as to his authority in a given particular being the matter in issue, it is the duty of the court to determine the issue by peremptory instructions to the jury." *American Saw Co.* v. *First National Bank of Trenton,* 60 *N. J. L.* 417.

Obviously, it cannot be held in the absence of ratification or estoppel that the plaintiff is bound by its manager's unauthorized act in surreptitiously taking customers' checks, affixing rubber stamp endorsements with no signatures appearing

thereunder, and negotiating them over to the credit of his own corporation, in which the plaintiff had no stock, no control or even knowledge of its existence. The very character of the rubber stamp impression of the plaintiff's name was sufficient evidence to put the defendant on notice and on guard, when these checks were presented for payment.

The second point raised by appellant is that the plaintiff is estopped from denying Schick's authority because plaintiff subsequently ratified his acts.

The alleged ratification consisted in the receipt by the plaintiff of rents aggregating $302.92 from the tenants of the houses conveyed by the Sheridan Construction Company to the Fidelity Home Builders, Incorporated, which plaintiff credited to the $35,000 account of the Sheridan Construction Company.

Appellant says that the collection of these rentals by defendant, after knowledge of the defalcation of Schick and after his discharge by the defendant, constitutes an acceptance of the benefits of his transaction and thereby ratifies all his acts in connection therewith, including the endorsement of the checks involved therein.

In order that ratification may be shown, it is incumbent on defendant to prove that the plaintiff had full knowledge of all the material facts. There is no evidence in the case that plaintiff had knowledge when Schick received these checks of their conversion to the use of the Fidelity Home Builders, Incorporated. The proofs were to the contrary.

Assuming, without deciding that plaintiff did have knowledge when it received the rents that Schick had more than a year before, fraudulently diverted its check to the Fidelity Home Builders, Incorporated, we fail to see how the circumstance of receipts of rents from the debtor Sheridan Construction Company leads to a conclusion that the plaintiff condoned and ratified Schick's acts in endorsing the two checks in question and diverting the proceeds to his own company.

To constitute ratification of Schick's defalcation there must be acts such as reasonably tend to show an intention on the

part of the plaintiff to ratify the unauthorized act or transactions of Schick.

The receipt of rents has, under the evidence, no relation to or connection with the rubber stamping by Schick of the name of the plaintiff on the back of the two checks.

The real question in the case is whether or not, under the facts and circumstances of this case, the appellant is liable to the plaintiff on an endorsement not properly made and which did not pass title to the checks.

Appellant insists that its motion for a nonsuit should have been granted because there existed no privity of contract between the plaintiff and appellant; that each of the checks was drawn to the order of the plaintiff but on the drawer's bank in each instance and not on the defendant's bank; that there was no relationship of bank and depositor between the parties under which the bank would owe a duty to disburse funds of a depositor upon the proper order of the depositor as was the case in the cases of *Economy Auto Supply Co., Inc.,* v. *Fidelity Union Trust Co.,* 105 *N. J. L.* 206; *Harter* v. *Mechanic National Bank,* 63 *Id.* 578; *Dennis* v. *Fidelity Union Trust Co.,* 99 *Id.* 365, and *American Saw Co.* v. *First National Bank,* 60 *Id.* 417, all of which are relied upon by the plaintiff.

That this contention is unsound is held by the Supreme Court in the case of *Buckley* v. *Second National Bank of Jersey City,* 35 *N. J. L.* 400, the legal principles of which we believe to be sound.

The principal contention made by the defendant in the Buckley case to resist liability was that there was no privity of contract.

The court held that the check drawn on the United States treasury, payable to Buckley and delivered to his attorney, Crossman, who obtained the money from the bank by forging the signature of Buckley, was at all times the property of Buckley and that he might recover the amount sued for in an action as money received by the bank to his use. Appellant says the decision in the Buckley case turned on the point that the endorsement was forged and that the court decided

the case on the general rule that no title can be obtained through a forgery and that the case is, therefore, not applicable to the instant case.

We fail to see the distinction in principle between the Buckley case and the instant case.

In effect there was forgery of an endorsement. It was made by a rubber stamp by one who had no right to affix the same and by means of which Schick succeeded in obtaining from the appellant moneys which it had collected for the plaintiff.

It seems to us there can be no substantial difference between an actual forging of a name to a check as an endorsement by a person not authorized to make the signature, and the affixing of a name to a check as an endorsement by the use of a rubber stamp by a person not authorized to use it.

The appellant does not deny collecting the money on the endorsement. It was the appellant's duty to inquire as to the genuineness of the plaintiff's endorsement and the authority of Schick to divert to his own company on a rubber stamp endorsement of plaintiff's name, funds belonging to plaintiff. The failure on the part of defendant to make such inquiry was a breach of duty that it owed plaintiff and made it liable to the plaintiff for the amount of the checks for money received by the defendant to the use of the plaintiff.

We conclude, therefore, that there was no error on the part of the trial court in denying appellant's motion of nonsuit and directing a verdict for the plaintiff, and that the judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, BROGAN, HEHER, KAYS, HETFIELD, WELLS, KERNEY, JJ. 13.

*For reversal*—None.